John H. Doerr, J.
In this article 78 proceeding commenced as a class action, petitioner attacks a determination by respondents which terminated welfare aid to her and her family, alleging same to be arbitrary, capricious and an abuse of discretion.
Petitioner and her five minor children are recipients of public assistance in the Federal category of Aid to Families with Dependent Children (AFDC).
She is separated from her husband but owns with him the family residence at 172 Hedley Place, Buffalo, New York, as a tenant by the entirety. The house itself is a two-family dwelling and petitioner occupies one part thereof with her children. The other portion is rented out for $110 per month.
This income is deducted from petitioner’s monthly welfare budget as is the sum of $45 per week support paid by the husband to the Erie County Department of Social Services through the Probation Department.
The house itself was purchased on April 3, 1957 for $15,500, the same being financed by a G.I. loan granted the husband. The present first mortgage balance was approximately $2,713.45 on July 1, 1974.
Respondent Sipprell caused a notice to be sent to petitioner advising her of the intent to discontinue public assistance and stating: “You have failed to cooperate as requested in the matter of executing a second mortgage on your property * * * This failure to cooperate constitutes a breach of Agency policy wherein all property owners, who are requested, must execute the mortgage as a criteria of eligibility.”
Petitioner timely requested a fair hearing thereon which was held on March 27, 1974.
By decision dated April 18, 1974, respondent Lavine affirmed the agency determination on the authority of 18 *726 NYCRR 369.2 (a) based upon the specific findings that petitioner owns a substantial equity in the property in question and the fact that petitioner presented no evidence at the hearing which established good reason for her refusal to execute the requested second mortgage.
The instant proceeding seeking review of that affirmance was then commenced.
There are two disturbing aspects in the April 18, 1974 decision.
In the first instance, a segment of the fair hearing transcript was lost or misplaced and therefore something less than the entire record was before respondent Lavine when he affirmed the agency action. That defect fatally taints the decision after fair hearing while raising a serious question as to the integrity thereof and in and of itself would mandate a reversal thereof were it not for an agreement between the parties to be later discussed.
The second concern to be mentioned in passing, however, is the suggestion that the burden of proof at the fair hearing was on petitioner and, overlooking the incomplete record, that she failed to sustain that burden.
The burden of proof when discontinuing aid to a needy family must be borne by the local agency in the first instance and not by a petitioner.
In any event, and after this matter came on for argument, the parties agreed that a second fair hearing take place. This was held on June 27, 1974, and the complete transcript thereof has been furnished to and carefully reviewed by this court.
As a result of the second fair hearing, respondent Lavine again affirmed the agency action and consequently all of the issues as originally presented now are before this court for review.
Petitioner contends that the blanket agency policy of requiring all property owners in her situation and receiving public assistance to execute a second mortgage when requested as a criteria of eligibility, without considering other pertinent factors, to be at variance with established and current State regulations in this regard.
The pertinent code provision which allows the Erie County Commissioner to take back a second mortgage on the subject *727 premises is found in 18 NYCRR 352.27 (a) as limited by subdivisions (b) and (c) thereof which provide:
"(b) A decision as to conservation, assignment or liquidation of non-income producing property which is used as the client’s home shall be based upon a consideration of the cost of carrying charges as compared with rental; marketability; the amount of client equity in the property; the client’s age, health and social situation, including the probable duration of dependency and the extent to which his social and economic rehabilitation or that of his dependent household are affected by conservation or liquidation of the property.
"(c) A decision as to conservation, assignment or liquidation of income-producing property used as the client’s home shall be based upon a consideration of the amount of assignable equity, probable duration of dependency, related social factors, the financial advantages of conserving income as compared with those of liquidation, and the costs of maintaining the property as compared with the amount of property income.” The agency policy here is far too broad and arbitrary because of the complete failure to take into consideration the pertinent factors as required by the State regulations.
This deficiency is heightened by the fair hearing transcript which points up the total lack of investigation and evaluation of both petitioner and the real property.
Respondent Sipprell has in effect informed petitioner that regardless of the circumstances relating to her personally or the property, continued public assistance to her and her children is bottomed solely on his demand that she execute a second mortgage on the property and that her failure to do so would and in fact did result in the termination of all aid.
The factors to be taken into account were not only given no weight, they were not considered at all.
Petitioner is requesting class action relief which is denied. Although the agency policy is hereby set aside, the State regulations do prevail and each case, resting on its own factual backdrop, must be decided on an ad hoc basis.
The evaluation of petitioner’s situation is peculiar to her as it would be for any comparable individual and it is the consideration of those factors which require the reversal of respondent Lavine’s affirmance of the agency action.
The fair hearing established that the home in question is in need of repairs and that the Erie County Health Department *728 and the City of Buffalo have served notice on petitioner to attend to same. She lacks the funds with which to do so and will have to borrow the money to complete them. Her position is that in order to do so it will be required that she execute a second mortgage as collateral for the repair loan and that a third mortgage is unacceptable for that purpose. It is undisputed that such repairs are necessary if the premises are to be conserved and remain habitable.
It also developed at the hearing that petitioner’s husband, a co-owner of the property, refused to execute a second mortgage for the agency and has instructed her not to do so.
Petitioner, who has a health problem, has been receiving public assistance for herself and her children for six years since the time of her separation from her husband although she and her husband owned their home for some 12 years prior thereto.
Even while a recipient of public assistance, petitioner and her children have not been entirely dependent thereon. As pointed out, her budgetary needs have been reduced by the support payments from her husband and rental income received on a monthly basis.
From a personal position, petitioner is involved, and commendably so, in a course of further education and studies designed to enhance her employability and thereby remove herself from the cycle of welfare dependency.
To this end she has completed a two-year course in occupational therapy at the Erie County Community College and at the time of the fair hearing had completed her first year of a four-year course thereon at the State University of New York at Buffalo.
She seeks to have the home remain unencumbered insofar as that is possible as "a workable place * * * after finishing school”, and as collateral for a loan, if necessary, for her "kids to go to college.”
Her current college expenses are being met with SEEK funds.
As for petitioner’s husband, he is self-supporting and not the recipient of public assistance and he has indicated his willingness to execute a second mortgage in order to secure the necessary loan required to correct the housing violations on the premises.
All of the above factors are pertinent and must be given *729 proper consideration before petitioner could be required to execute a second mortgage on the property as a prerequisite to aid.
The Erie County Department of Social Services paid these requirements no heed whatsoever. There was no agency investigation at all and no consideration given to the marketability of the property, petitioner’s age, the probable duration of dependency or petitioner’s social situation.
Such lack of consideration was contrary to the pertinent regulation 18 NYCRR 352.27 (c) and leads to the inescapable conclusion that the determination by respondents was arbitrary, capricious, an abuse of discretion and contrary to law.
Disregarding such findings, the termination decision by respondents was erroneous as it related to the family unit for an entirely different reason.
Based upon petitioner’s refusal to execute the second mortgage, all welfare assistance, including that for the five minor children, was terminated. This was not only erroneous but resulted in a severe penalty to the children for a matter over which they had no control.
The Second Department has addressed itself to this very question where a mother refused to execute a second mortgage and aid to children was terminated. The court held that: "In our opinion, the intent of Congress, in its adoption of sections 601 et seq. of Title 42 of the United States Code, which set forth the requirements of need and dependency for the Aid to Dependent Children grant which petitioner’s children were receiving, was to secure such grants for eligible children, notwithstanding a refusal of the parent to comply with a local agency’s demand under section 360 of the Social Services Law.” (Matter of Payne v Sugarman, 39 AD2d 720, affd 31 NY2d 845.)
Citing Payne (supra) as authority, it has been held that: "The fact that petitioner may share in the title to the home in which she and her children live does not in and of itself render her or the children ineligible for assistance. (Social Services Law, § 360, subd 1; 18 NYCRR 352.27 [a].) The social services agency has procedures at its disposal to prevent the undue enrichment of recipients who own property (see Social Services Law, § 360) but these do not include the termination of assistance to children who are otherwise in need. (See Matter of Payne v Sugarman, 39 AD2d 720, affd 31 NY2d 845; Matter of Ryan v New York State Department of Social *730 Servs., 40 AD2d 867.)” (Matter of Jennings v Lavine, 79 Misc 2d 176, 178).
The determination of respondents discontinuing assistance to the children of petitioner is annulled and the matter is remitted to respondents for the determination of their continuing eligibility in accordance herewith, and the benefits to the eligible children are directed to be reinstated, retroactively from March 31, 1974, the date of termination.
The determination of respondents discontinuing assistance to petitioner is likewise annulled and the matter is remitted to respondents for further proceedings and findings consistent herewith and in accordance with 18 NYCRR 352.27.